
FILED
2022 Sep-13  PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **BLACK WARRIOR RIVERKEEPER, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. _____** |
| **v.** | ) | |
| | ) | |
| **WARRIOR MET COAL MINING, LLC** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MRC-FG, LLC** | ) | |
| | ) | |
| **Defendants** | ) | |
| | **)** | |

## **COMPLAINT**

COMES NOW Plaintiff Black Warrior Riverkeeper, Inc. (Riverkeeper), and files this Complaint against Defendants Warrior Met Coal Mining, LLC (WMC) and MRG-FC, LLC (MRG-FC) as follows:

### *Nature of the Case*

1.      This is a citizen suit under the Clean Water Act ("CWA") § 505, 33 U.S.C. § 1365 based upon continuing and/or intermittent discharges of mine wastewater and/or other pollutants from WMC's Mine No. 7 into an unnamed tributary (Tributary 1), which flows into an unnamed tributary of Texas Creek (Tributary 2).

Tributary 2 discharges into Texas Creek, which discharges into Davis Creek, a tributary of the Black Warrior River. Section 301(a) of the CWA, 33 U.S.C. 1311(a), prohibits discharges of pollutants by any person into waters of the United States except in compliance with the terms of a permit issued by EPA or an authorized State pursuant to § 402 of the CWA, 33 U.S.C. § 1342. Tributary 1, Tributary 2, Texas Creek, Davis Creek and the Black Warrior River are all waters of the United States.

2.     This is also an action under the Surface Mining Control and Reclamation Act ("SMCRA") § 520, 30 U.S.C. § 1270, to compel compliance with a rule or regulation issued pursuant to SMCRA § 503, 30 U.S.C. § 1253 (*i.e.*, Ala. Admin. Code rs. 880-X-10C-.12 (4)(a), 880-X-10C-.18 and 880-X-10C-.49 (1)).

3.     Finally, this is also an action under the Alabama Surface Mining Control and Reclamation Act ("ASMCRA"), Ala. Code § 9-16-95, to compel compliance with a rule or regulation issued pursuant to Ala. Code § 9-16-90 (*i.e.*, Ala. Admin. Code rs. 880-X-10C-.12 (4)(a), 880-X-10C-.18 and 880-X-10C-.49 (1)).

4.     This action seeks declaratory relief, injunctive relief, penalties and costs of litigation (including reasonable attorney and expert witness fees).

### *Jurisdiction and Venue*

5.     This action arises under CWA § 505(a), 33 U.S.C. § 1365(a), SMCRA § 520, 30 U.S.C. § 1270, ASMCRA, Ala. Code § 9-16-95, and 28 U.S.C. §§ 2201

and 2202 (declaratory judgments). This Court has subject matter jurisdiction over the claims set forth in this Complaint under CWA § 505(a), 33 U.S.C. § 1365(a), SMCRA § 520(a), 30 U.S.C. § 1270(a), 28 U.S.C. §1331 (federal question), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

6.      Riverkeeper served notice of the violations alleged herein and their intent to sue on WMC and MRC-FG by certified mail in accordance with CWA § 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.3; SMCRA § 520(b)(1)(A), 30 U.S.C. § 1270(b)(1)(A), and 30 C.F.R. §700.13; and ASMCRA § 9-16-95(b)(1)(a), and Ala. Admin. Code r. 880-X-2A-.09 on June 21, 2022, a copy of which is appended hereto as Exh. 1. Copies of such notice were also served on the Administrator of the U.S. Environmental Protection Agency, the Regional Administrator of the U.S. Environmental Protection Agency - Region 4, the Director of the Alabama Department of Environmental Management, the Secretary of the Interior, the Director of the Office of Surface Mining, the Regional Director of the Office of Surface Mining, the Field Office Director of the Office of Surface Mining, and the Director of the Alabama Surface Mining Commission.

7.      Neither the Administrator of the U.S. Environmental Protection Agency nor the State of Alabama has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or in a court of the State of

Alabama, to require that WMC and MRC-FG comply with the Clean Water Act at Mine No. 7.

8.      Neither the Administrator of the U.S. Environmental Protection Agency nor the State of Alabama has issued a final order not subject to further judicial review under CWA § 309(g), 33 U.S.C. § 1319(g), or comparable law of the State of Alabama, assessing a penalty for violations of the Clean Water Act prior to Riverkeeper's June 21, 2022 notice letter.

9.       Neither the Secretary of Interior nor the State of Alabama has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or in a court of the State of Alabama, to require that WMC comply with Ala. Admin. Code rs. 880-X-10C-.12 (4)(a), 880-X-10C-.18 and 880-X-10C-.49 (1).

10.    Since Riverkeeper gave notice to WMC and MRC-FG, the violations complained of have not ceased.

11.    Venue is appropriate in the Northern District of Alabama because the source of the violations is in Tuscaloosa County, Alabama which is located within the Western Division of the Northern District of Alabama. CWA § 505(c)(1), 33 U.S.C. §1365(c)(1); SMCRA § 520(c)(1), 30 U.S.C. § 1270(c)(1).

*Parties*

12.    Plaintiff Riverkeeper is an Alabama nonprofit membership corporation with over 6,000 members that is dedicated to the protection and restoration of the Black Warrior River and its tributaries. WMC and/or MRC-FG are discharging pollutants into Tributary 1, which flows into Tributary 2, Texas Creek and Davis Creek, classified as Fish and Wildlife, which are all waters of the United States located within the Black Warrior River basin. Riverkeeper actively supports effective implementation and enforcement of environmental laws, including the CWA, SMCRA and ASMCRA, on behalf and for the benefit of its members.

13.    Members of Riverkeeper use and value Texas Creek, Davis Creek and their tributaries for recreation, including but not limited to canoeing, kayaking, fishing, swimming, wildlife observation, nature and landscape observation and photography, and for aesthetic enjoyment. The violations alleged herein have lessened their recreational and aesthetic enjoyment of Texas Creek, Davis Creek and their tributaries. They would use and enjoy these waters more if the violations alleged herein are abated. These members believe these waters have been polluted and degraded by WMC's and/or MRC-FG's actions, and that local wildlife and aquatic life has been harmed by the pollution described in the Complaint. Moreover, they are concerned about the polluted mine drainage that Mine No. 7 is putting into Tributary 1, Tributary 2, Texas Creek and Davis Creek as well as

whether those pollutants make it unsafe to recreate below the mine. They are also concerned about the possibility of a catastrophic release of these pollutants into these waterways if the seep discharges are indicative of any structural compromise at Slurry Impoundment No. 14.

14.     Defendant WMC is a foreign corporation that does business in the state of Alabama. It is a U.S. based company that operates underground mines in Alabama, including Mine No. 7 at 17503 Stanley Rd, Brookwood, AL 35444 in Tuscaloosa County, Alabama. WMC is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

15.     Defendant MRC-FG is a foreign corporation that does business in the state of Alabama. MRC-FG is permitted to operate the coal processing facility at the site known as Mine No. 7 Preparation Plant at 18069 Hannah Creek Road, Brookwood, Tuscalooosa County, Alabama. MRC-FG is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

*Facts*

16.     On October 19, 1979, the Administrator of the U.S. Environmental Protection Agency approved the state of Alabama's National Pollutant Discharge Elimination System (NPDES) permit program pursuant to CWA § 402(b), 33 U.S.C. § 1342(b). 44 Fed. Reg. 61452 (1979).

17.    Pursuant to SMCRA § 503, 30 U.S.C. § 1253, and state law, the Alabama Surface Mining Commission (ASMC) issued rules and regulations to provide for the regulation of surface coal mining and reclamation operations consistent with regulations issued by the Secretary of the Interior under SMCRA. On January 11, 1982, the ASMC submitted a surface coal mining and reclamation regulatory program to the Secretary of the Interior for review. On May 20, 1982, and at other times thereafter, the Secretary of the Interior approved the State of Alabama's surface coal mining and reclamation regulatory program under SMCRA § 503, 30 U.S.C. § 1253, 30 C.F.R. Part 901; 47 Fed. Reg. 22057 (1982).

18.    Mine No. 7 is an underground coal mining operation with an associated wet preparation plant with surface water discharges to Davis Creek, Prudes Creek, Shoal Creek, an unnamed tributary (UT) to Clark Branch, UTs to Davis Creek, a UT to Hannah Mill Creek, UTs to Mudd Creek, a UT to Lye Branch, UTs to Prudes Creek, UTs to Rockhouse Creek, a UT to Texas Creek, and a UT to Woods Creek, all classified as Fish and Wildlife, in the Black Warrior River basin.

19.    On February 24, 2021, the Alabama Department of Environmental Management (ADEM) modified and reissued National Pollutant Discharge Elimination System (NPDES) Permit Number AL0029181 to WMC effective March 1, 2021 at Mine No. 7. The WMC NPDES permit covers an underground

coal mine with dry and wet preparations, transportation and storage, and associated areas, and a sewage treatment lagoon.

20.    On February 24, 2021, ADEM issued NPDES Permit No. AL0084140 to MRC-FG. The MRC-FG NPDES permit covers a new source coal wet preparation plant at Mine No. 7 and authorizes MRC-FG to discharge treated process wastewater from the coal fines recovery process, along with drainage from the underground workings of the underground mine, drainage from mine reclamation, discharge of process water from the coal fines recovery, and runoff from disturbed and auxiliary areas.  The MRC-FG permit authorizes these discharges at specific outfalls at Mine No. 7 and its prep plant. Outfalls 001, 002 and 008, previously permitted under the WMC NPDES permit AL0029181, are now permitted under MRC-FG's NPDES permit AL0084140.

21.    The WMC and MRC-FG NPDES permits authorize the Defendants to discharge treated process wastewater from mining and coal washing operations, and wastewater incidental to those operations, at specific outfalls at Mine No. 7, subject to certain limitations.[1] The NPDES permits also require Warrior Met and MRC-FG "to operate and maintain all facilities and systems of treatment and

---

[1] NPDES Permit No. AL0029181 (WMC), Part I.A; NPDES Permit No. AL0084140 (MRC-FG), Part I.A.

control (and related appurtenances) ...."[2] The WMC and MRC-FG NPDES permits specifically prohibit the "discharge of a pollutant from a source not specifically identified in the permit application for this Permit and not specifically included in the description of an outfall in this Permit;" such a discharge "is not authorized and shall constitute noncompliance with this Permit."[3]

22.    On August 3, 1983, the State of Alabama issued ASMC Permit P-3247 to WMC authorizing surface mining operations at Mine No. 7 incident to an underground coal mine. On March 16, 2018, the State of Alabama reissued ASMC Permit P-3247 to Warrior Met Coal. That permit expires March 1, 2023.

23.    Although Mine No. 7 is an underground mine, it has a significant amount of surface area where geologic overburden (GOB) removed from the underground mine works is stockpiled on the surface (the GOB pile). Immediately to the west of the GOB pile is Slurry Impoundment No. 14. Slurry Impoundment No. 14 is where wastewater from the mine's various operations, including the preparation plant, is stored before being sent through a series of sedimentation ponds and then discharged to waters of the State and U.S., subject to the conditions and limitations

---

[2] NPDES Permit No. AL0029181 (WMC), Part II.A.1; NPDES Permit No. AL0084140 (MRC-FG). Part II.A.1.

[3] NPDES Permit No. AL0029181 (WMC), Part II.D.1.f; NPDES Permit No. AL0084140 (MRC-FG), Part II.D.1.f.

of NPDES Permit Nos. AL0029181 (WMC) and AL0084140 (MRC-FG). An interactive map of Mine No. 7 made by Riverkeeper may be found at https://www.google.com/maps/d/u/1/edit?mid=1kGMWLE85cjToy0Ld7jjTlCDuN u5yCg4&usp=sharing.

24.     WMC was authorized under the previous version of NPDES Permit No. AL0029181 to discharge from Slurry Impoundment No. 14 through Outfall DSN-007-1 to waters of the State, including an unnamed tributary of Texas Creek (Tributary 1).[4] However, ADEM released WMC from monitoring at DSN-007-1 on August 10, 2020. Warrior Met advised ADEM on July 23, 2020 that the flow previously discharged through DSN-007-1 had been rerouted to flow through Basin 009/Outfall DSN-008,[5] and that discharges from DSN-007-1 had been discontinued. However, not all of the flow from Slurry Impoundment No. 14 was rerouted to Basin 009/DSN-008.

25.     WMC and/or MRC-FG continue to discharge pollutants through large volume seeps from Slurry Impoundment No. 14, downgradient of former DSN-

---

[4] NPDES Permit No. AL0029181 at 1.

[5] The discharge monitoring reports (DMRs) being submitted to ADEM under NPDES permit AL0084140 (MRC-FG) are publicly available at http://app.adem.alabama.gov/eFile/. The wastewater being discharged from Outfall DSN 008 is chemically similar to the seep discharges from Slurry Impoundment No. 14: conductivity at Outfall DSN 008 typically measures over 2,000 $\mu$S/cm.; total dissolved solids measure around 1,800 mg/L and sulfates range from 500 – 1,000 mg/L. Like the seep discharges, the wastewater discharged from Outfall DSN 008 also exhibits relatively low concentrations of total suspended solids and metals.

007-1. These seeps are emanating from the base of the hillside downgradient of the southwestern tip of Slurry Impoundment No. 14. Large volumes of mine wastewater are seeping out of the hillside berm surrounding the slurry impoundment in multiple locations. The ground is saturated with water and the plants and trees are mostly dead, causing the area to be bare and muddy. The water is typically cloudy and grey blue-green. The seep waters combine in channelized drainages and flow through remnants of a beaver pond and former dam to the northeast into Tributary 1 along the north side of Milldale Road in Tuscaloosa County.  Tributary 1 flows into Tributary 2 (an unnamed tributary of Texas Creek), which joins with Texas Creek, which flows into Davis Creek.[6]

26.    On June 21, 2022, Riverkeeper notified WMC and MRC-FG of its intention to file suit under the CWA and SMCRA for violations of law at Slurry Impoundment No. 14. (Exh. 1). That letter detailed and documented unpermitted seep discharges from Slurry Impoundment No. 14 downgradient of the location of former Outfall DSN-007-1 on the following dates: May 20, 2021; June 11, 2021; June 14, 2021; July 8, 2021; November 9, 2021; December 16, 2021; March 25, 2022; April 6, 2022; April 12, 2022; June 3, 2022 and June 16, 2022. Exh. 1 at 5-8.

---

[6] Depicted at:
https://www.google.com/maps/d/u/1/edit?mid=1kGMWLE85cjToy0Ld7jjTlCDuNu5yCg4&usp=sharing.

27.   On May 20 [33.284067, -87.240481], November 9 [33.2843540, -87.2406456], December 16 [33.2843531, -87.2406248], 2021, and April 12, 2022 [33.2843461,-87.2404180], Riverkeeper took water samples of the seep discharges at the identified GPS locations and submitted them to Sutherland Environmental Company, a full service environmental testing laboratory certified by ADEM and the U.S. EPA.

28.   Analytical results from the tests show the presence of iron, manganese, magnesium, aluminum, nickel, and zinc as well as chloride and sodium, which are characteristic of coal mining and prep plant operations, as well as the presence of a hazardous chemical, di-n-octylphthalate.[7] The analytical results also show elevated levels of specific conductance (conductivity), sulfate, and total dissolved solids that are characteristic of wastewater from coal mining, coal preparation and their associated activities.[8]

29.   EPA has recommended a conductivity benchmark of 300 - 500 µS/cm for the Central Appalachian region based upon peer-reviewed scientific studies. *See*

---

[7] WMC states that it has never used nor stored any product containing di-n-octylphthalate at Mine No. 7.  Exh. 2 at 2.

[8] The samples were taken on May 20 [33.284067, -87.240481], November 9 [33.2843540, -87.2406456], December 16 [33.2843531, -87.2406248], 2021, and April 12, 2022 [33.2843461,-87.2404180].  The sample results are attached as Exh. A, Exh. B, Exh. C, and Exh. D to the notice letter (Exh. 1). As stated in the notice letter, the December 16 sample of the beaver pond shows the presence of di-n-octylphthalate, a volatile organic compound which is classified as a hazardous substance. https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=971&toxid=204.

*Improving EPA Review of Appalachian Surface Coal Mining Operations Under the Clean Water Act, National Environmental Policy Act, and the Environmental Justice Executive Order* (July 21, 2011) at 18.[9] Ionic pollution, as measured by conductivity and sulfates, is a pollutant under the CWA.  *See, e.g., Ohio Valley Envtl. Coal v. Elk Run Coal*, 24 F.Supp.3d 532 (S.D.W.Va. 2014); *Ohio Valley Envtl. Coal v. Fola Coal*,  845 F.3d 133 (4th Cir. 2017).

30.    On May 20, November 9, December 16, 2021, and April 12, 2022, the conductivity levels in the sampled seep discharges below Slurry Impoundment No. 14 were between 3-6 times EPA's highest benchmark level of 500 μS/cm.[10]

31.    After the service of the June 21, 2022 notice letter, Riverkeeper staff and/or members documented additional violations through photography on June 23, 2022; June 26, 2022; June 28, 2022; July 5, 2022; July 13, 2022; July 18, 2022; August 16, 2022; August 26, 2022; August 30, 2022 and August 31, 2022. Exh. 3.

32.    On August 16, 2022, Riverkeeper Nelson Brooke photographed and sampled (Exh. 4) additional seep discharges at Slurry Impoundment No. 14. On August 16,

---

[9] Alabama is in central Appalachia and Eco-region 68 (as is Kentucky, which is one of the two states where the scientific studies underlying the Final Guidance were conducted).

[10] See Exh. 1, with exhibits A, B, C, and D attached to, and the following specific conductance measurements. May 20, 2021: 2,580 μS/cm, November 9, 2021: 3,010 μS/cm, December 16, 2021: 2,850 μS/cm, and April 12, 2022: 1,743 μS/cm.

at Seep 1 [33.2843865, -87.2406205], conductivity measured at 1,790 µS/cm.[11] At Seeps A & B [33.284294, -87.240681], conductivity measured at 1,770 µS/cm. At Seep C [33.2843801, -87.2404773], conductivity measured at 1,850 µS/cm. At Seep D [33.2843761, -87.2404492], conductivity measured at 1,860 µS/cm. The seep discharges below Slurry Impoundment No. 14 sampled on August 16 were close to 4 times EPA's highest benchmark level of 500 µS/cm.

33.    On August 19, 2022, WMC sent a detailed response letter to Riverkeeper's June 21, 2022 notice letter. (Exh. 2).

34.    Among other things, that response indicates that on August 19, 2022, WMC asked ADEM for "permission to reactivate and relocate Outfall 007 to capture, control, and monitor any flow of water from the beaver dam area to the unnamed tributary of Texas Creek." *Id.* at 1-2. However, because reactivating and relocating DSN 007-1 is considered a "major" modification of the permit, ADEM must issue a revised draft permit subject to the Department's notice and comment process. *Id.* at 2. To date, there has been no modification of NPDES Permit No. AL0029181 that would authorize a discharge of wastewater from DSN 007-1 (or the seeps) to Tributary 1.

---

[11] The results for specific conductance returned by Sutherland were provided in units of µmho/cm. However µS/cm and µmho/cm are equivalent units. Therefore, for the sake of simplicity, all specific conductance results for this complaint are given in µS/cm.

35.     In the meantime, WMC indicated its intention to implement an "additional pro-active measure," namely a pump system to address any flow of water from the beaver pond/dam area to Tributary 1 while the NPDES permit modification request is pending. *Id.* The pump system is supposed to "pump the water into our NPDES-permitted area to be discharged from an existing permitted outfall, as necessary." *Id.*

36.     On August 30, 2022, Black Warrior Riverkeeper, Nelson Brooke, again photographed and sampled the beaver pond/dam area around Tributary 1. Two large volume, channelized seeps (more like waterfalls) were continuing to contribute significant flow into Tributary 1, which flows into an unnamed tributary of Texas Creek (Tributary 2). Exh. 5. WMC had installed and was operating a pump attached to a new pipeline leading upgradient to Slurry Impoundment No. 14, but it was not pumping any water into WMC's or MRC-FG's NPDES-permitted area. Exh. 6. Tributary 1 was flowing rapidly over the remnants of the beaver dam downstream. Exh. 7.

37.     Brooke submitted the water samples he took August 30 to Sutherland Environmental Company. Those results are attached as Exh. 8.[12]

---

[12] In addition, the August 30 samples showed high levels of *e. coli* bacteria in the seep discharges and downstream. At Channelized Seep 1, *e. coli* measured 2,200 cols./100ml. At Channelized Seep 2, *e coli* measured 2900 cols./100ml. Downstream at the beaver pond, *e. coli* measured 3,100 cols./100ml. WMC's NPDES permit limits the discharge of *e. coli* bacteria in the summer (May – October) to a monthly average of 126 col./100mL and a daily maximum of 298

38.     At the westernmost channelized seep (Channelized Seep 1, 33.2842965, -87.2405538), conductivity was measured at 2,260 µS/cm.

39.     At the second channelized seep (Channelized Seep 2, 33.2842971, -87.2404257), conductivity was measured at 2,250 µS/cm.

40.     In Tributary 1 (33.2840406, -87.2402758) downstream of the seep discharges, at the outfall from the former beaver pond, conductivity was measured at 2,310 µS/cm.

41.     A study performed by ADEM evaluated the impacts of mining on streams in the Black Warrior basin. [13] That study's eco-reference or control samples taken from water bodies not impacted by coal mining measured conductivity values between 17.8 µS/cm and 134 µS/cm.[14] The study's samples taken directly from coal mining outfalls measured conductivity values between 638.8 (BMW-36) and 2,555µS/cm (CHMJ-47).[15] The conductivity in the samples taken from the seeps at

---

col./100mL. *See* NPDES Permit No. AL0029181, Part I.A.4. The discharges at Channelized Seep 1 and Channelized Seep 2 could constitute two additional violations of WMC's NPDES permit, which strictly limits the amount of *e. coli* the mine may discharge.

[13] ADEM, *Assessment of Water Quality in Wadeable Streams near Surface Coal Mining Facilities in the Black Warrior River Basin in Alabama* (December 2013), found at http://adem.alabama.gov/programs/water/wqsurvey/2013CoalMiningReport.pdf.

[14] *Id. See* BERT-4 (Table A-22) (Minimum 36.9, Max 134, Average 65.9); BRSL-3 (Table A-23) Minimum 17.8, Max 61, Average 31.1); INMW-1 (Table A-24) (Minimum 24.9, Max 50, Average 34.7); WIMJW-4 (Table A-24) (Minimum 24.9, Max 50, Average 34.7).

[15] *Id. See* DRMW-12 (Table A-6) (Minimum 764.0, Max 1749, Average: 1195.0); DRMW-3 (Table A-9) (Minimum 1244, Max 1888, Average 1524.5); BWM-21 (Table A-12) (Minimum

Mine No. 7 and from the water flowing into Tributary 1 is indicative of coal mine drainage.

*Count I*
*Clean Water Act:*
*Unpermitted Discharge Violations*

42.     Riverkeeper incorporates paragraphs 1 through 41 by reference.

43.     WMC and/or MRC-FG are in violation of §§ 301 and 402 of the CWA (33 U.S.C. §§ 1311 and 1342) at Mine No. 7. These laws mandate that Warrior Met Coal and MRC-FG shall not discharge pollutants to waters of the United States except in compliance with any permit issued pursuant to the NPDES program.

44.     On May 20, 2021; June 11, 2021; June 14, 2021; July 8, 2021; November 9, 2021; December 16, 2021; March 25, 2022; April 6, 2022; April 12, 2022; June 3, 2022; June 16, 2022; June 23, 2022; June 26, 2022; June 28, 2022; July 5, 2022; July 13, 2022; July 18, 2022; August 16, 2022; August 26, 2022; August 30, 2022 and August 31, 2022 Black Warrior Riverkeeper members or employees have documented large volume seeps discharging from the hillside at the southwest end of Slurry Impoundment No. 14, downgradient of the location of former Outfall DSN-007-1. Those seeps flow into Tributary 1, which joins with Tributary 2

---

677, Max 1551, Average 1344.1); BMW-36 (Table A-15) (Minimum 638.8, Max 1398, Average 1054.2); CHMJ-47 (Table A-18) (Minimum 1705, Max 2555, Average 2200.9); WIMJ-1 (Table A-20) (Minimum 221.9, Max 418.2, Average 346.6).

before emptying into Texas Creek, a tributary of Davis Creek. Davis Creek is a tributary of the Black Warrior River.

45.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a NPDES permit issued by EPA, or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

46.    Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person ... who is alleged to be in violation of .... an effluent standard or limitation under this chapter."

47.    Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § l365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311 (a), of the CWA and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

48.    In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

49.     Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the Court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

50.     Warrior Met Coal and/or MRC-FG are persons who are (1) discharging (2) pollutants (3) into waters of the United States (4) from a point source (5) without a permit at Mine No. 7. *Parker v. Scrap Metal Processors, Inc*., 386 F.3d 993, 1003 (11th Cir. 2004).

51.     The CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A). At Mine No. 7, WMC and/or MRC-FG engineered, constructed and operated Slurry Impoundment No. 14 to channel and dispose of wastewater from the operations of the preparation plant, coal washer, underground mine works, and sewage treatment plant, together with surface water runoff. That wastewater, high in mining-related conductivity, dissolved solids and sulfates, discharges into Tributary 1 through these seeps.

52.     Mine drainage, based upon its component parts, including but not limited to, conductivity, sulfates, total dissolved solids, iron, aluminum, manganese, zinc, copper, and nickel satisfies the definition of a "pollutant" under the CWA.

53.    A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, . . . discrete fissure, container . . . from which pollutants are or may be discharged." 33 U.S.C.A. § 1362(14).  Point sources include surface water which is channeled or collected by man. 40 C.F.R. §122.2. The Eleventh Circuit has instructed courts to "interpret the term 'point source' broadly." *Parker*, 386 F.3d at 1009 (citing *Dague v. City of Burlington*, 935 F.2d 1343, 1354-55 (2d Cir. 1991) ("The concept of a point source was designed to further this scheme by embracing the broadest possible definition of any identifiable conveyance from which pollutants might enter waters of the United States.")). Slurry Impoundment No. 14 is a point source because it is a manmade, discernible, confined and discrete conveyance that impounds and discharges polluted water through the channelized seeps into Tributary 1.

54.    WMC and MRC-FG do not have a permit, and are not authorized, under Section 301(a) and Section 402 of the CWA, to discharge pollutants from the seeps below Slurry Impoundment No. 14 into Tributary 1.

55.    WMC and/or MRC-FG have violated Section 301(a) of the CWA on a continuing and or/intermittent basis by illegally discharging pollutants from a point source into Tributary 1 without a permit on each and every day documented by Riverkeeper, and continuing into the future.

56.    The ongoing violations alleged herein will continue unless this Court orders and enjoins WMC and/or MRC-FG to cease any and all illegal and unpermitted discharges. These violations have caused and will continue to cause Riverkeeper irreparable injury. Riverkeeper has no adequate remedy at law for the injuries caused by WMC's and/or MRC-FG's continuing violations. WMC and/or MRC-FG are subject to civil penalties and injunctive relief for the violations as described above.

### *Count II*
### *Clean Water Act:*
### *Violations of*
### *NPDES Permit No. AL0029181*

57.    Riverkeeper incorporates paragraphs 1 through 56 by reference.

58.    WMC and/or MRC-FG are in violation of Section 301(a) of the CWA, 33 U.S.C. 1311(a), which prohibits the discharge of pollutants by any person into waters of the United States except in compliance with the terms of a permit, such as an NPDES permit issued by the EPA or an authorized State pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

59.    On May 20, 2021; June 11, 2021; June 14, 2021; July 8, 2021; November 9, 2021; December 16, 2021; March 25, 2022; April 6, 2022; April 12, 2022; June 3, 2022; June 16, 2022; June 23, 2022; June 26, 2022; June 28, 2022; July 5, 2022; July 13, 2022; July 18, 2022; August 16, 2022; August 26, 2022; August 30, 2022;

and August 31, 2022 Black Warrior Riverkeeper members or employees documented large volume, channelized seeps discharging from the hillside at the southwest end of Slurry Impoundment No. 14, downgradient of the location of former Outfall DSN-007-1. The seep discharges have been occurring for over a year and have increased over time: there are more of them, their volume of discharge has increased, the denuded areas around them have gotten larger, and there is more dead vegetation.

60.    The seep discharges are violations of the following terms and conditions of NPDES Permit Nos. AL0029181 (WMC) and NPDES Permit No. AL0084140 (MRC-FG).

61.    First, the seep discharges downgradient of Slurry Impoundment No. 14 constitute the "discharge of a pollutant from a source not specifically identified in the permit application for this Permit and not specifically included in the description of an outfall in this Permit." The seep discharge locations are not specifically identified in the applications for NPDES Permit No. AL0029181 (WMC) or NPDES Permit No. AL0084140 (MRC-FG). The seep discharge locations are not specifically included in the description of any outfall under either NPDES permit. The seep discharges are not authorized by and constitute noncompliance with NPDES Permit No. AL0029181 (WMC) and NPDES Permit No. AL0084140 (MRC-FG).

62.    Second, the seep discharges downgradient of Slurry Impoundment No. 14 result from the failure of WMC and/or MRC-FG "to operate and maintain all facilities and systems of treatment and control (and related appurtenances)" at Mine No. 7 …." The failure to operate and maintain Slurry Impoundment No. 14 so that it impounds wastewater and does not contribute mine drainage to Tributary 1 constitutes noncompliance with a condition of NPDES Permit No. AL0029181 (WMC) and NPDES Permit No. AL0084140 (MRC-FG).

63.    These violations of NPDES permit conditions are also violations of 33 U.S.C. § 1311(a). WMC and/or MRC-FG are subject to civil penalties and injunctive relief for the violations as described above.

### Count III
#### Surface Mining Control and Reclamation Act:
#### Violation of Performance Standards
#### (Protection of Environmental Values and Water Quality)

64.    Riverkeeper incorporates paragraphs 1 through 63 by reference.

65.    The state of Alabama, through the ASMC, developed performance standards under SMCRA designed to protect environmental values and water quality at the Mine No. 7 that state-permitted mine operators like WMC must meet.

66.    "Surface-water quality shall be protected by handling earth materials, ground-water discharges, and runoff in a manner that . . . prevents, to the extent possible using the best technology currently available, additional contribution of

suspended solids to streamflow outside the permit area; and *otherwise prevents water pollution*." Ala. Admin. Code r. 880-X-10C-.12 (4)(a) (emphasis added).

67.    In addition, "[d]ischarges from sedimentation ponds, permanent and temporary impoundments, coal processing waste, dams and embankments, and diversions shall be controlled, by energy dissipaters, riprap channels, and other devices, where necessary, to reduce erosion, to prevent deepening or enlargement of stream channels, and *to minimize disturbance of the hydrologic balance*. Ala. Admin. Code r. 880-X-10C-.18 (emphasis added).

68.    Moreover, "the operator shall, to the extent possible using the best technology currently available, minimize disturbances and adverse impacts on fish, wildlife, and related environmental values and shall achieve enhancement of such resources where practicable." Ala. Admin. Code r. 880-X-10C-.49 (1).

69.    WMC has not prevented water pollution, maintained the hydrologic balance or otherwise minimized the disturbance of environmental values at Mine No. 7. Instead, WMC's seep discharges allow the contribution of water pollution through the unpermitted seeps into Tributary 1, which flows into a UT to Texas Creek (Tributary 2), Texas Creek, Davis Creek, and the Black Warrior River. These failures by WMC at Mine No. 7 pollute the water, disturb the hydrologic balance and contribute to adverse impacts on fish, wildlife, water quality, and those who live and recreate downstream. Ala. Admin. Code r. 880-X-10C-.49 (1).

70.    The violations alleged herein will continue unless this Court enjoins WMC. These violations have caused and will continue to cause Riverkeeper irreparable injury. Riverkeeper has no adequate remedy at law for the injuries caused by WMC's continuing violations.

### *Count IV*
*Alabama Surface Mining Control and Reclamation Act:*
*Violation of Performance Standards*
*(Protection of Environmental Values and Water Quality)*

71.    Riverkeeper incorporates paragraphs 1 through 70 by reference.

72.    The State of Alabama, through the ASMC, developed performance standards designed to protect environmental values and water quality at the Mine No. 7 that mine operators like WMC must meet.

73.    "Surface-water quality shall be protected by handling earth materials, ground-water discharges, and runoff in a manner that . . . prevents, to the extent possible using the best technology currently available, additional contribution of suspended solids to streamflow outside the permit area; and *otherwise prevents water pollution*." Ala. Admin. Code r. 880-X-10C-.12 (4)(a) (emphasis added).

74.    In addition, "[d]ischarges from sedimentation ponds, permanent and temporary impoundments, coal processing waste, dams and embankments, and diversions shall be controlled, by energy dissipaters, riprap channels, and other devices, where necessary, to reduce erosion, to prevent deepening or enlargement

of stream channels, and *to minimize disturbance of the hydrologic balance*. Ala. Admin. Code r. 880-X-10C-.18 (emphasis added).

75.    Moreover, "the operator shall, to the extent possible using the best technology currently available, minimize disturbances and adverse impacts on fish, wildlife, and related environmental values and shall achieve enhancement of such resources where practicable." Ala. Admin. Code r. 880-X-10C-.49 (1).

76.    WMC has not prevented water pollution, maintained the hydrologic balance or otherwise minimized the disturbance of environmental values. Instead, WMC's seep discharges allow the contribution of water pollution through the unpermitted seepsInstead, WMC's seep discharges allow the contribution of water pollution through the unpermitted seeps into Tributary 1, which flows into a UT to Texas Creek (Tributary 2), Texas Creek, Davis Creek, and the Black Warrior River. These failures by WMC at Mine No. 7 pollute the water, disturb the hydrologic balance and contribute to adverse impacts on fish, wildlife, water quality, and those who live and recreate downstream. Ala. Admin. Code r. 880-X-10C-.49 (1).

77.    The violations alleged herein will continue unless this Court enjoins WMC. These violations have caused and will continue to cause Riverkeeper irreparable injury. Riverkeeper has no adequate remedy at law for the injuries caused by WMC's continuing violations.

## ***Demand for Relief***

Riverkeeper respectfully requests that this Court grant the following relief:

A.    Render a judgment finding and declaring that WMC and/or MRC-FG have violated and are violating the Clean Water Act through the illegal and unpermitted discharges of pollutants from a point source (Slurry Impoundment No. 14) via the channelized seeps into Tributary 1;

B.    Render a judgment finding and declaring that WMC and/or MRC-FG are in violation of those terms and conditions of NPDES Permit No. AL0029181 and NPDES Permit No. AL0084140 which prohibit the  discharge of pollutants from areas or outfalls not specifically identified and authorized by the permit;

C.     Render a judgment finding and declaring that WMC and/or MRG-FC are in violation of those terms and conditions of NPDES Permit No. AL0029181 and NPDES Permit No. AL0084140 which require them to operate and maintain all facilities and systems of treatment and control at Mine No. 7;

D.    Render a judgment finding and declaring that WMC is in violation of the requirements of Ala. Admin. Code r. 880-X-10C-.12 (4)(a); Ala. Admin. Code r. 880-X-10C-.18; and  Ala. Admin. Code r. 880-X-10C-.49 (1), which require that mining prevent water pollution while preserving and protecting the hydrologic balance and fish and wildlife values;

E.      Issue an injunction ordering WMC and MRC-FG to immediately cease all
        continuing and/or intermittent violations of the Clean Water Act at Mine No.
        7;

F.      Issue an injunction ordering WMC to immediately cease all ongoing and
        continuing SMCRA and ASMCRA violations at Mine No. 7;

G.      Assess a civil penalty of $52,414.00 per violation for each and every
        actionable violation of the Clean Water Act alleged herein after November
        2, 2015, in accordance with CWA § 505(a), 33 U.S.C. § 1365(a) (*see* 40
        C.F.R. Part 19).

H.      Award costs of litigation (including reasonable attorney and expert witness
        fees) to Riverkeeper in accordance with CWA § 505(d), 33 U.S.C. §
        1365(d); and 42 U.S.C. § 6972(e).

I.      Award Riverkeeper such other or different relief to which it may be entitled.


Respectfully submitted,


Eva L. Dillard
ASB-4118-A59E
Attorney for Plaintiff
Black Warrior Riverkeeper, Inc.
712 37th Street South
Birmingham, AL 35222-3206
(205) 458-0095 Office

(205) 458-0094 Facsimile
edillard@blackwarriorriver.org

Copies provided via certified mail to:

Merrick B. Garland,
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Michael S. Regan, Administrator
U.S. Environmental Protection Agency
Office of the Administrator, Mail Code 1101A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Daniel Blackman, Administrator
U.S. Environmental Protection Agency Region 4
Sam Nunn Atlanta Federal Center
61 Forsyth Street, SW
Atlanta, GA 30303-8960

Lance LeFleur, Director
Alabama Department of Environmental Management
P. O. Box 301463
Montgomery, AL  36130

Debra Haaland, Secretary
U. S. Department of the Interior
849 C. Street, N. W.
Washington, D.C. 20240

Lanny Erdos, Director

Office of Surface Mining, Reclamation and Enforcement
Department of Interior
1849 C. Street NW
Washington, DC 20240

Alfred Clayborne, Regional Director
OSMRE Mid-Continent Region
William L. Beatty Federal Building
501 Belle Street #216
Alton, Illinois 62002

Richard B. O'Dell, Director
OSMRE Birmingham Field Office
Barber Business Park
135 Gemini Circle #215
Homewood, AL 35209

Kathy Love, Director
Alabama Surface Mining Commission
PO Box 2390
Jasper, AL 35502-2390